IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DANA COWAN, | ) | CASE NO. 1:14-CV-1363 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | KENNETH S. McHARGH |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | **REPORT & RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule 72.2(b). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Dana Cowan's ("Plaintiff") applications for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, and for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Magistrate Judge recommends that the decision of the Commissioner be AFFIRMED.

**I. PROCEDURAL HISTORY**

Plaintiff filed applications for Disability Insurance benefits and Supplemental Security Income benefits around April 25, 2011. (Tr. 11, 238-44, 245-50). Plaintiff alleged he became disabled on August 1, 2003, due to suffering from leg and spine issues. (Tr. 238, 245, 268). The Social Security Administration denied Plaintiff's applications on initial review and upon reconsideration. (Tr. 169-75, 178-84).

1

At Plaintiff's request, an administrative law judge ("ALJ") convened an administrative hearing on November 30, 2012, to evaluate his applications. (Tr. 26-126).  Plaintiff, represented by counsel, appeared and testified before the ALJ. (*Id*). A vocational expert ("VE") also appeared and testified. (*Id.*).

On December 20, 2012, the ALJ issued a decision finding Plaintiff was not disabled. (Tr. 11-20).  After applying the five-step sequential analysis,[1] the ALJ determined Plaintiff retained the ability to perform work existing in significant numbers in the national economy. (*Id.*). Subsequently, Plaintiff requested review of the ALJ's decision from the Appeals Council. (Tr. 7).  The Appeals Council denied the request for review, making the ALJ's December 20, 2012, determination the final decision of the Commissioner. (Tr. 1-4).  Plaintiff now seeks judicial review of the ALJ's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability."  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1) If a claimant is doing substantial gainful activity–i.e., working for profit–she is not disabled.

(2) If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3) If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4) If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5) Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was born on September 18, 1963, and was 39-years-old on the alleged disability onset date and 49-years-old at the time of the ALJ's decision. (Tr. 19, 238). Accordingly, he was considered a "younger person" for Social Security purposes. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c). Plaintiff has past relevant work as a forklift driver and material handler. (Tr. 106).

### B. Medical Evidence[2]

On October 17, 2002, Plaintiff sought treatment in the emergency department for a right foot injury. (Tr. 435-46). Plaintiff reported that an extension blade had hit the side of his right foot. (Tr. 437). X-rays were taken and Plaintiff was diagnosed with a contusion or abrasion on his ankle as a result of a work-related accident. (Tr. 437, 442). An Ace wrap was placed on Plaintiff's right ankle and his abrasion was cleaned and bandaged. (Tr. 437). That same day, Plaintiff was cleared to return to work, but was prohibited from performing tasks that required the use of his right leg for two days. (Tr. 442).

From December 2005 through August 2008, Plaintiff sought treatment at St. Vincent Charity Hospital for various acute conditions. (Tr. 320-402). Treatment notes from this period did not reflect significant musculoskeletal abnormalities. (Tr. 340, 347, 349-50, 356, 367). It does not appear that Plaintiff complained of pain in his right lower extremity. (*Id.*).

Plaintiff did not seek treatment for his foot injury until June 2008, when he presented to chiropractor James O'Reilly. (Tr. 479-81). Plaintiff voiced complaints of right foot and leg pain with occasional numbness that traveled into his toes. (Tr. 479). He claimed that he experienced spasms and swelling in his right foot and could not stand on his feet for extended periods.

---

[2] The following recital of Plaintiff's medical record is an overview of the medical evidence pertinent to Plaintiff's appeal. It is not intended to reflect all of the medical evidence of record.

3

Plaintiff stated that his symptoms were the result of a work-related injury in October 2002 where a piece of steel for a forklift shot toward him and crushed his right foot and leg. Plaintiff reported that x-rays taken soon after the accident, however, were negative for fracture or dislocation. Plaintiff did not undergo therapy or further treatment for the injury. (*Id.*). During a physical examination, O'Reilly observed that Plaintiff had a mild limp favoring the right foot. (Tr. 480). There was moderate tenderness to palpation of the dorsum and plantar aspect of the right foot, with slight hypertonicity and mild swelling. All movements of the foot and ankle were limited and caused pain. (*Id.*). O'Reilly prescribed treatment twice per week for approximately eight weeks. (Tr. 475, 480).

Plaintiff underwent 18 chiropractic treatments through October 15, 2008. (Tr. 455-74). At each session, O'Reilly reported that Plaintiff was making "consistent" progress. (*Id.*). By September 2008, Plaintiff told O'Reilly that he experienced improvement. (Tr. 457).

On October 14, 2008, Alan Wilde, M.D., undertook an occupational medicine consultation as part of Plaintiff's application for workers' compensation. (Tr. 404-06). Plaintiff reported to Dr. Wilde that he was injured in October 2002 when a forklift extension dropped on his right shin. (Tr. 404). Plaintiff claimed that x-rays showed all of the bones in the region of the metatarsal heads were broken. He reported that he was treated with an ACE bandage and could not walk for three to four weeks, even though no cast, brace, or splint was used. (*Id.*).

In contrast, Dr. Wilde noted that medical records showed only a contusion, an abrasion, and ecchymosis, and Plaintiff's range of motion had remained intact. (Tr. 404-05). A physical examination performed by Dr. Wilde showed that Plaintiff tended to hold the right large toe in dorsiflexion and he could not stand on the toes of his right foot. (Tr. 405). There was no measurable atrophy of the calf or swelling of the forefoot. There was no scarring on the ankle or

4

tenderness where Plaintiff indicated the injury had occurred. (*Id.*). Plaintiff had some weakness in extending his toes and diminished sensation in the plantar aspect of the toes. (Tr. 405-06). Dr. Wilde concluded there was no evidence of residual injury from the accident and treatment for injury arising from the accident was not necessary. (Tr. 406).

In a letter dated April 27, 2010, O'Reilly indicated that Plaintiff was denied a consultation with a foot specialist due to Dr. Wilde's October 2008 report. (Tr. 454). O'Reilly stated that Plaintiff had "reported to several different doctors" that his right foot was broken in 2002. O'Reilly disagreed with Dr. Wilde's report that Plaintiff was asymptomatic. O'Reilly wrote that Plaintiff had a marked limp and related weakness in the lower right leg, which could "be directly attributed to a severe foot injury in which several bones were broken." However, O'Reilly did not have medical records from the emergency room following the injury. The chiropractor advocated for an investigation of whether Plaintiff had broken bones. (*Id.*).

Diagnostic imaging was taken of Plaintiff's lumbosacral spine in October 2011. (Tr. 417). The study showed only minimal narrowing of the L5-S1 disc space. (*Id.*). That same month, an imaging study of Plaintiff's right foot and ankle revealed mild soft tissue swelling without fracture or subluxation. (Tr. 419).

On October 18, 2011, Naomi Waldbaum, M.D., examined Plaintiff at the request of the state disability determination bureau. (Tr. 423-29). Plaintiff reported that during a 2002 work injury, a heavy piece of steel fell onto his foot, and as he withdrew to remove it, the steel moved and fell a second time, but on the outside of his ankle. (Tr. 427). He claimed that he was off of work for one month and returned to work another eight months, but became slower on the job and retired. Plaintiff reported no pain while sitting, but that his foot would swell when walking.

5

He endorsed cramps in his calf and some low back pain. (*Id.*). Plaintiff was functional in all activities of daily living but could not drive. (Tr. 428).

Dr. Waldbaum observed that Plaintiff was overweight, but ambulated in an essentially functional and non-antalgic manner with some trace abnormality on the right side. (Tr. 428). Plaintiff appeared to walk on the outside of the right foot and did not put his toes directly on the floor. An examination showed no obvious atrophy in the right calf, though the dorsum of the right foot was very pink compared to the left foot. Dr. Waldbaum described puffiness rather than a gross swelling in the foot over the dorsum and malleoli. (*Id.*). Plaintiff's reflexes were intact and there was no sensory abnormality aside from some areas of the right foot. (Tr. 428-29). Right straight leg raising was up to 40 degrees on the right, and normal on the left. (Tr. 429). Plaintiff's lumbar flexion and extension were limited, but not due to discomfort. (Tr. 428). There was no discomfort in palpating the spine. (Tr. 429). Dr. Waldbaum opined that Plaintiff could be helped by an appropriate physical therapy program, but would be able to perform many types of work activities that did not involve an excessive amount of standing, walking, and climbing. (*Id.*).

On October 26, 2011, state agency physician Jerry McCloud, M.D., performed a review of the record. (Tr. 130-33). Dr. McCloud gave little weight to the opinion of Dr. Waldbaum, because the evidence did not support limiting Plaintiff to work that did not require significant standing, walking, or climbing. (Tr. 132). The doctor opined that Plaintiff could lift or carry 50 pounds occasionally and 25 pounds frequently; stand, walk, or sit for up to six hours in an eight hour workday; and occasionally use his right leg to operate foot controls. (*Id.*). Plaintiff was able to perform all postural activities frequently. (Tr. 132-33).

On March 31, 2012, state agency physician Olga Pylaeva, M.D., reviewed the record. (Tr. 152-53). She affirmed Dr. McCloud's assessment. (Tr. 153).

Around March 2012, O'Reilly completed a questionnaire in association with Plaintiff's application for disability benefits. (Tr. 430-32). The chiropractor indicated that he first treated Plaintiff in June 2008 and last treated Plaintiff in October 2008. (Tr. 431). He described Plaintiff's diagnosis as a right leg contusion and cited Plaintiff's complaints of pain and stiffness. (*Id.*). O'Reilly opined that Plaintiff was limited in his abilities to walk, stand, and jump, and should be limited to under 15 minutes of constant standing or walking. (Tr. 432).

### III. SUMMARY OF THE ALJ'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2009.

2. The claimant has not engaged in substantial gainful activity since August 1, 2003, the alleged onset date.

3. The claimant has the following severe impairments: chronic right foot sprain, degenerative disc disease, and obesity.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except for the following limitations. The claimant can perform occasional kneeling, crouching, and balancing, but no crawling (taking into account the use of the cane). The claimant can never climb ladders, ropes, or scaffolds. The claimant must avoid all exposure to workplace hazards, such as unprotected heights or moving mechanical parts. The claimant is limited to simple, routine, repetitive tasks and low-stress work activity (no high production / quotas) (taking into account the effects of pain).

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on September 18, 1963, and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8. The claimant as at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2003, through the date of this decision.

(Tr. 13-20) (internal citations omitted).

## IV. DISABILITY STANDARD

Claimants are entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when they establish disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when he or she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20 C.F.R. §§ 404.1505, 416.905.

## V. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x. 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

### VI. ANALYSIS

On October 29, 2014, Plaintiff filed a "Supplement to Notice," which the Court informed Plaintiff did not satisfy the requirements for briefs filed in social security cases. (Doc. Nos. 17, 18). The Court granted Plaintiff additional time to file a brief that complied with the requirements described in the Court's Initial Order. (Doc. No. 18).

On November 25, 2014, Plaintiff filed a "Brief on [the] Merits." (Doc. No. 19). In this filing, Plaintiff does not meaningfully challenge the ALJ's decision on the merits. That is, Plaintiff does not intelligibly identify any errors that the ALJ may have committed when reviewing his applications for benefits.

After reviewing the record and the ALJ's opinion, the Court concludes that the ALJ's decision is supported by substantial evidence. The ALJ applied the appropriate standards when completing each step of the sequential evaluation process and sufficiently considered and assessed all of the evidence. The Court does not find that the ALJ committed error such that remand for further consideration should be recommended.

As part of his filings, Plaintiff submits some evidence. (Doc. Nos. 17, 19). The evidence included in Plaintiff's "Supplement" (Doc. No. 17) is a duplicate of any documents submitted with his brief. As a result, for the purpose of this opinion, the Court will cite to only the evidence in Plaintiff's brief.

The court is "confined to review evidence that was available" to the ALJ in determining whether the ALJ's decision is supported by substantial evidence. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992). "There is no backdoor route to get new evidence considered for the first time at the . . . appeals level; the only method to have new evidence considered is to ask for a sentence six remand under 42 U.S.C. § 405(g)." *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Sentence six of 42 U.S.C. § 405(g) permits a court to remand a case back to the ALJ for consideration of new evidence under certain circumstances. However, the plaintiff must show that the evidence is (1) new, (2) material, and (3) there was good cause for the failure to incorporate such evidence into the prior proceeding. 42 U.S.C. § 405(g); *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984) (per curiam).

To be considered "new," the evidence at issue must not have been "in existence or available to the claimant at the time of the administrative proceeding." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010) (*citing Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

10

2001)). In addition, new evidence "cannot be cumulative of evidence already in the record." *Elliot v. Apfel*, 28 F. App'x 420, 423 (6th Cir. 2002) (*citing Robertson v. Shalala*, 1996 WL 384542, at *3 (6th Cir. July 8, 1996)). Evidence is "material" when there is a reasonable probability that the ALJ would have decided the claim differently if presented with the new evidence. *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 484 (6th Cir. 2006) (*quoting Foster*, 279 F.3d at 357). Finally, a claimant shows "good cause" by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ. *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). Remand is only proper when all three elements are satisfied.

Despite submitting evidence with his filings, Plaintiff has failed to carry his burden to demonstrate how the evidence is new, material, and whether good cause exists, making remand inappropriate on this ground. Assuming for the purpose of this analysis that Plaintiff had provided some argument, the Court would nevertheless conclude that the evidence fails to qualify either as new or as material.

In his filing, Plaintiff includes the following: (1) portions of hospital records from 2002 where Plaintiff was treated for his right foot injury (Doc. No. 19 at 11, 42-47); (2) a temporary approval for Medicaid in July 2013 and other documents associated with a Medicaid application (*Id.* at 34-36); (3) a doctor's note stating that Plaintiff was seen on July 7, 2014, for evaluation and treatment of a right lower extremity injury (*Id.* at 38); (4) a February 2014 x-ray of Plaintiff's right foot that showed severe diffuse osteopenia (bone mineral density that is lower than normal), but no other significant abnormality (*Id.* at 49); (5) a February 2014 note from Mark Berkowitz, M.D., explaining that Plaintiff had an appointment that day, surgery would have a 20 percent chance of being successful, and after surgery Plaintiff would always need to

11

wear a brace and would never be able to run (*Id.* at 40); and (6) Dr. Berkowitz's March 2014 orthotic prescription for a molded ankle gauntlet. (*Id.* at 41).[3]

To begin, the portion of the 2002 hospital records, which were dated October 17, 2002, were part of the record before the ALJ. (*Compare* Doc. No. 19 at 11, 42-45 *with* Tr. 435-41). The only portion of these records that do not appear to be part of the administrate transcript were those dated October 22, 2002. (Doc. No. 19 at 46-47).[4] While these hospital records may qualify as new, they are not material. The records recount a hospital visit on October 22, 2002, where Plaintiff complained of mild to moderate pain in his right foot following his work accident. The diagnosis was a foot contusion. The healthcare provider described ecchymosis, swelling, and a 1.5 centimeter round abrasion in the areas of Plaintiff's right foot and ankle. Plaintiff's range of motion was intact. Plaintiff was instructed to rest, ice, and elevate the leg; use an Ace wrap; and follow up with a physician in one week. (*Id.*). This evidence would not change the ALJ's decision. It recounts the 2002 work accident and Plaintiff's resulting symptoms, which were similarly described in the record before the ALJ. The healthcare provider did not impose long-term restrictions on physical activity or describe the injury in a light that would lead the ALJ to have concluded it was disabling.

The remainder of the evidence in Plaintiff's filing was not before the ALJ, but the Court finds that the evidence was not material. To begin, the evidence was from over two years after the disability period closed. Generally, evidence of a subsequent deterioration or change in the plaintiff's condition after the administrative hearing is deemed immaterial. *Wyatt*, 974 F.2d at 685; *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711-12 (6th Cir. 1988).

---

[3] Plaintiff also filed a number of administrative documents that were produced in the process of his disability application and are already part of the administrative record that was before the ALJ. Additionally, Plaintiff's submission of letters to his legal counsel or issued by counsel are not evidence.

[4] Dr. Wilde, however, appears to have discussed the October 22, 2002, hospital records in his report. (Tr. 404-05).

Furthermore, documents related to Medicaid provide no additional information regarding Plaintiff's impairments. While the remaining medical evidence suggests that Plaintiff could undergo surgery, presumably on his foot or ankle, and would require a brace thereafter, it does not support a finding that Plaintiff would be disabled. The only restriction Dr. Berkowitz imposed was a ban on running. Accordingly, there is not a reasonable probability that the evidence would have led the ALJ to decide Plaintiff's claim differently. Remand under 42 U.S.C. § 405(g) is not appropriate.

## VII. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence. Accordingly, the undersigned recommends that the decision of the Commissioner be AFFIRMED.

s/ Kenneth S. McHargh  
Kenneth S. McHargh  
United States Magistrate Judge

Date: June 12, 2015.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).